IN THE MATTER OF: THE APPEAL OF STROH BREWERY COMPANY FROM THE APPRAISAL OF CERTAIN REAL PROPERTY BY THE FORSYTH COUNTY BOARD OF EQUALIZATION AND REVIEW FOR 1991

No. 9310PTC1144

(Filed 6 September 1994)

**1. Taxation § 99 (NCI4th); Attorneys at Law § 25 (NCI4th)— Property Tax Commission—appeal of valuation—out-of-state attorney**

The Property Tax Commission did not err in denying the County's motion to dismiss an appeal from the Forsyth County Board of Equalization and Review's affirmation of Forsyth County's valuation of property owned by the Stroh Brewery Company where the County had moved to dismiss because Stroh's out-of-state attorney was not licensed to practice law in North Carolina. Assuming that the filing of a notice of appeal with the Commission is the practice of law, the question of the right of the attor-

**IN RE APPEAL OF STROH BREWERY**

[116 N.C. App. 178 (1994)]

ney to file the notice of appeal is a collateral matter, unrelated to the merits of the appeal before the Commission, and should not serve to prejudice Stroh Brewery. The attorney was a "property tax representative" or "consultant" of Stroh Brewery authorized to represent Stroh Brewery under Rule 3 of the North Carolina Property Tax Commission Rules.

**Am Jur 2d, Attorneys at Law § 23; State and Local Taxation §§ 782 et seq.**

2. **Appeal and Error § 156 (NCI4th)—appearance of out-of-state attorney—failure to object—issue not preserved for appeal**

An issue involving an appearence by an out-of-state attorney before the Property Tax Commission was not preserved for appeal where the County failed to timely object, stating "[w]e don't consent to it, but we do not contest it. Just for today, is that correct? . . . I wouldn't want to speak about the issue of her representation." N.C.R. App. P. 10(b)(1) (1994).

**Am Jur 2d, Appeal and Error §§ 562 et seq.**

3. **Taxation § 87 (NCI4th)— property tax—valuation—obsolescence—sufficiency of evidence**

There was sufficient evidence to support the Property Tax Commission's findings of total accrued depreciation where the Commission's finding that improvements on the property were affected by functional and economic obsolescence which the County did not consider was supported by competent, material and substantial evidence. Although the Commission agreed that the property was affected by functional and economic obsolescence, it was not then bound to accept the appraisor's percentage for such obsolescence and could arrive at its own percentage so long as it was supported by compentent, material, and substantial evidence.

**Am Jur 2d, State and Local Taxation §§ 753 et seq.**

Appeal by petitioner Stroh Brewery Company and respondent Forsyth County from the Final Decision of the North Carolina Property Tax Commission entered 14 June 1993. Heard in the Court of Appeals 9 June 1994.

**IN RE APPEAL OF STROH BREWERY**

[116 N.C. App. 178 (1994)]

*Powell & Deutsch, P.C., by Robert J. Deutsch, and Freedman & Areeda, P.C., by Nanci Wolf Freedman, for petitioner-appellee/appellant.*

*Office of Forsyth County Attorney, by Bruce E. Colvin, for respondent-appellee/appellant.*

GREENE, Judge.

On 14 June 1993, the North Carolina Property Tax Commission (the Commission), sitting as the State Board of Equalization and Review, reversed the Forsyth County Board of Equalization and Review's (the Board) affirming of Forsyth County's (the County) assignment of a value of $30,374,900.00 to property owned by the Stroh Brewery Company (Stroh Brewery) and assigned a value of $24,599,830.00 to such property. Stroh Brewery filed notice of appeal on 12 July 1993, and the County and its Tax Assessor filed notice of appeal on 14 July 1993.

Stroh Brewery, a national beer producer and distributor with its main corporate offices in Michigan, has owned and operated an industrial brewing facility in Winston-Salem, Forsyth County, North Carolina, since the early 1980's. The property encompasses approximately 125 acres and includes a 1,182,833 square foot industrial building used to house the machinery and equipment used in brewing beer. The property also accommodates packaging, warehouse, distribution, and offices for the brewing process.

In 1991, the County assessed the property at a value of $30,374,900.00. On 10 October 1991, John Dinsmore (Dinsmore), Stroh Brewery's Director of Real Estate and Ad Valorem Taxation, requested in writing on behalf of Stroh Brewery for the Board to review the County's ad valorem tax value of the property because the "property is over assessed." On 18 November 1991, the Board unanimously affirmed the County's $30,374,900.00 value. On 18 December 1991, Nanci Wolf Freedman (Freedman), a Michigan resident, filed with the Commission a notice of appeal. On 23 December 1991, Freedman filed with the Commission a letter dated 16 December 1991 from Dinsmore, stating "Nanci Wolf Freedman is hereby authorized to represent the Stroh Brewery Company in regards to any and all tax appeals in the State of North Carolina."

On 2 November 1992, Freedman filed a motion with the Commission to permit limited practice of an out-of-state attorney. Also on 12

November 1992, the Commission, based on Freedman's good standing with the Michigan bar, her limited request to represent Stroh Brewery in this matter only, and her association with Robert Deutsch (Deutsch), an attorney licensed to practice in North Carolina, granted Freedman's motion and ordered that she "be allowed to appear as counsel of record in this action pro hac vice pursuant to G.S. 84-4.1."

At the hearing held on 12 November 1992, Chairman Cocklereece (the Chairman) of the Commission first addressed "the subject, admitting Mrs. Freedman to practice before our Board" and stated "there has been a motion made to that effect, and I have signed an order admitting [Freedman] for the limited purpose of the hearing before us today. . . . I don't think there is any objection from the County." The County's attorney, Mr. Colvin, responded, "We don't consent to it, but we do not contest it. Just for today, is that correct? . . . I wouldn't want to speak about the issue of her representation."

The Chairman then addressed the issue of the County's motion to dismiss. The County argued that the appeal should be dismissed and that "[t]here is no appeal, no jurisdiction" because Freedman was not "qualified to appear in this case in North Carolina" until 12 November 1992. The Commission denied the County's motion to dismiss because a "notice of appeal was signed by Mrs. Freedman" and accompanied by "an authorization and power of attorney as it were, signed by Mr. Dinsmore on behalf of Stroh Brewery Company" and

in accordance with our normal rules with respect to the filing of a notice of appeal that the filing of the notice of appeal does not have to be done by an attorney licensed in North Carolina. It can be done pursuant to power of attorney. A party does, however, need an attorney to represent them in the hearing, which we have done here.

The County excepted to this denial. The Commission proceeded to hear Stroh Brewery's appeal of the Board's decision.

The Chairman first noted that because "there is no significant difference in opinion of value as to the land" or Stroh Brewery's "replacement cost of the improvements and the County's replacement cost of the improvements," "we need to concentrate . . . on the value of the improvements to the land. . . . There is a substantial difference in the two parties' ideas of what the depreciation to be applied against that figure is." Stroh Brewery submitted an appraisal drafted by M.J. McCloskey & Associates which valued the property at

$12,500,000.00 as of 1 January 1988. Michael J. McCloskey, Jr. (McCloskey) testified that he reviewed the North Carolina Uniform Appraisal Standard and that his market value definition conforms to the requirements of that standard. He considered the "market data approach," "the income approach," and "[r]ather than to let it stand alone, I did a cost approach, to show support for the indication reflected by the market data approach. . . . The income approach was obviously out of the question. Not relevant." He also stated "[t]he cost approach simply, which the Board knows, cost to create property, reproduction costs, deduct the accrued depreciation, which is physical, functional, external, economic, from the reproduction cost, add the land value, and theoretically it will give you the indication of value, which properly done will do." "[T]hat's the key, physical, functional or economic. . . . The difference is accrued depreciation" which means "the value lost from all sources." He found that the property was affected by total, accrued depreciation in the amount of 65%. McCloskey also presented a comparison with the market value of the Heilman Brewery Company in Perry, Georgia, which is almost identical to Stroh Brewery's property and is valued at a price similar to McCloskey's valuation of Stroh Brewery's property.

Jesse Ring (Ring), tax assessor for the County, submitted an opinion of the value of the property and testified that although the International Association of Assessing Officers recommends the application of the market approach, the income approach, and the cost approach, he only applied the cost approach. He stated that "[i]n the mass appraisal business you consider all three approaches. But the cost approach is most relevant for what we have to do. Time does not permit for us to go out and do a market analysis on all properties. So, we rely on the cost approach to come up with the value of all property." Ring also stated that "[a]ccrued depreciation can be physical, economic or functional. In my report I used physical depreciation, age and condition of the buildings." He "did not make any deduction whatsoever for functional or economic obsolescence" "because [he] did not think at this point in time when [he] made the appraisal that it warranted any economic and functional depreciation."

The Commission made the following pertinent findings of fact:

5. Mr. McCloskey applied a total depreciation of 65% to the yard improvements; Mr. Ring applied a total depreciation of approximately 5% to the yard improvements.

**IN RE APPEAL OF STROH BREWERY**

[116 N.C. App. 178 (1994)]

6. Mr. McCloskey estimated that the subject improvements were affected by total accrued depreciation of 65 percent, consisting of physical depreciation of 15 percent and functional and/or economic depreciation of 50 percent.

7. Mr. Ring estimated that the subject improvements (except for the yard improvements) were affected by total accrued depreciation of approximately 20-25 percent. Mr. Ring did not make an adjustment for functional or economic obsolescence.

. . . .

11. Based on the analysis of data contained in [Stroh Brewery] Exhibit 1, particularly the offering data on the Heilman Brewery in Perry, Georgia, and on the testimony of [Stroh Brewery]'s witnesses, the Commission finds that the subject improvements were affected on 1 January 1988 by functional and economic obsolescence which the County did not consider in the course of its appraisal.

12. The Commission finds that a proper adjustment for obsolescence not considered by the County is as follows:

| | |
|---|---|
| Replacement Cost New of Real Property Improvements | $36,703,020 |
| Less accrued depreciation at 37.75% | $13,855,390 |
| Depreciated replacement cost | $22,847,630 |

13. The Commission finds that the true value in money of the subject property as of 1 January 1988 was:

| | |
|---|---|
| Depreciated replacement cost (see previous paragraph) | $22,847,630 |
| Land value per County | $1,752,200 |
| Total Value | $24,599,830 |

Based on these findings, the Commission made the following conclusions of law:

1. [Stroh Brewery] made a timely and proper appeal to the Property Tax Commission from a decision of the Forsyth County Board of Equalization and Review for 1991. . . .

. . . .

3.   The County's appraisal of the subject property was affected by an appraisal error . . . the County's failure to make any adjustment for functional or economic obsolescence. [sic] in the appraisal of the real property improvements.

4.   The County's appraisal of the subject property improvements at a value of $28,622,700 was substantially greater than the true value in money of the improvements, which the Commission found to be $22,847,630.

---

The issues presented are whether (I) the Commission lacked jurisdiction to hear Stroh Brewery's appeal because the notice of appeal was signed only by an attorney not licensed to practice law in North Carolina; and (II) there is competent, material and substantial evidence to support the Commission's finding that the County erred in failing to consider functional and economic obsolescence and the Commission's valuation of the property.

I

[1] The County contends that its motion to dismiss Stroh Brewery's appeal to the Commission should have been granted because the appeal violated the Commission's own rules and N.C. Gen. Stat. § 84-4, in that Freedman was not licensed to practice law in North Carolina. We disagree.

Rule 3 of the Commission's Rules provides:

A "**property tax representative**" or "**consultant**" may file an appeal with the Property Tax Commission on behalf of a property owner, <u>provided</u> he attaches to such appeal a copy of his "power-of-attorney" or other authorization to represent the property owner. . . .

North Carolina Property Tax Commission, Rule 3. Thus, Rule 3 does not require a person filing an appeal on behalf of a property owner to be an attorney licensed to practice in North Carolina.

Assuming that the filing of a notice of appeal with the Commission is the practice of law and in violation of N.C. Gen. Stat. § 84-4 (1985), *see* N.C.G.S. § 84-2.1 (1985) ("practice law" means "performing any legal service for any other person, firm or corporation"), dismissal of the appeal is not an appropriate remedy. *See Duke Power Co. v. Daniels*, 86 N.C. App. 469, 472, 358 S.E.2d 87, 89 (1987) (violation of GS 84-5 "is not of such gravity . . . as to deprive the court of

jurisdiction and justify the dismissal of plaintiff's action"). The question of the right of Freedman to file the notice of appeal is a collateral matter, unrelated to the merits of the appeal before the Commission and should not serve to prejudice Stroh Brewery. *See Sawyer v. Boyajian*, 5 N.E.2d 348 (Mass. 1936); *see also Theil v. Detering*, 68 N.C. App. 754, 756, 315 S.E.2d 789, 791, *disc. rev. denied*, 312 N.C. 89, 321 S.E.2d 908 (1984) (pleading filed by attorney not authorized to practice law in this state is not a nullity); *Practice Mgmt. Assocs., Inc. v. Walding*, 138 F.R.D. 148, 149 (M.D. Fla. 1991) (violation of rule requiring attorney to be admitted within district did not warrant striking of pleadings, prejudicing party's cause for his attorney's technical errors); *Alexander v. Robertson*, 882 F.2d 421, 425 (9th Cir. 1989) (judgment rendered in case where unauthorized attorney practiced law is neither void nor subject to reversal); *see generally* Vitauts M. Gulbis, Annotation, *Right of Party Litigant to Defend or Counterclaim on Ground that Opposing Party or his Attorney is Engaged in Unauthorized Practice of Law*, 7 A.L.R. 4th 1146 (1981).

Therefore, because Freedman was a "property tax representative" or "consultant" of Stroh Brewery authorized to represent Stroh Brewery as evidenced by Dinsmore's letter stating "Freedman is hereby authorized to represent the Stroh Brewery Company in regards to any and all tax appeals in the State of North Carolina" and because her signing the notice of appeal does not justify dismissal, the Commission did not err in denying the County's motion to dismiss. Although the attorney for the County argued at the hearing that its motion to dismiss should be granted because an attorney licensed to practice in North Carolina did not sign Stroh Brewery's Application for Hearing, this issue is deemed abandoned because the County did not discuss it in its brief. N.C.R. App. P. 28(a) (1994).

[2] The County also argues that the Commission erred in granting Freedman's motion to permit limited practice of an out-of-state attorney because the motion did not comply with the requirements of N.C. Gen. Stat. § 84-4.1. In addressing this issue, we are assuming, without deciding, that an out-of-state attorney can move for limited practice in front of the Property Tax Commission under Section 84-4.1. *See* N.C.G.S § 84-4.1 (1993) (out-of-state attorney "may, on motion, be admitted to practice in the General Court of Justice or the North Carolina Utilities Commission or the North Carolina Industrial Commission or the Office of Administrative Hearings of North Carolina"). In this case, because the County failed to timely object to the granting of this motion and of Freedman's appearance at the hearing, stating

that "[w]e don't consent to it, but we do not contest it. Just for today, is that correct? . . . I wouldn't want to speak about the issue of her representation," the County has failed to preserve this issue for appellate review. N.C.R. App. P. 10(b)(1) (1994).

II

**[3]** Our General Assembly requires all property in this State be appraised for ad valorem taxation purposes at its "true value in money" or market value as far as practicable, N.C.G.S. § 105-283 (1992), and all the various factors, *see* N.C.G.S. § 105-317 (1992), which enter into the market value are to be considered by the assessors in determining this market value for tax purposes. *In re Appeal of Bosley*, 29 N.C. App. 468, 471, 224 S.E.2d 686, 688, *cert. denied*, 290 N.C. 551, 226 S.E.2d 509 (1976). An appraisal "is an estimate of value derived through the application of one, two, or all three of the generally accepted approaches to value—the *Market Data Approach, Cost Approach,* and *Income Approach.*" Patrick K. Hetrick, Larry A. Outlaw, & James A. Webster, Jr., *North Carolina Real Estate for Brokers and Salesmen* ch. 16, at 604 (3d ed. 1986) [*Real Estate for Brokers*]. Part of the cost approach is deducting for depreciation, which is "a loss of utility and, hence, value from any cause . . . the difference between cost new on the date of appraisal and present market value." *Real Estate for Brokers* at 615. Depreciation may be caused by deterioration, which is a physical impairment such as structural defects, or by obsolescence, which is "an impairment of desirability or usefulness brought about by changes in design standards (*functional obsolescence*) or factors external to the property (*economic obsolescence*)." *Id.*; *see In re Valuation*, 282 N.C. 71, 191 S.E.2d 692 (1972) (our Supreme Court affirms State Board's conclusion County did not give proper consideration to functional and economic factors affecting property's value); *In re Appeal of Westinghouse Elec. Corp.*, 93 N.C. App. 710, 379 S.E.2d 37 (1989) (Commission properly subtracted physical depreciation from reproduction cost new and then subtracted depreciation for functional and economic obsolescence from resulting subtotal).

N.C. Gen. Stat. § 105-345.2 governs the standard of our review in this case and provides that:

(b) . . . The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced

because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error. . . .

N.C.G.S. § 105-345.2(b), (c) (1992). Review in this Court is further limited to the exceptions and assignments of error set forth to the decision of the Commission, *see Watson v. North Carolina Real Estate Comm'n*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987), *cert. denied*, 321 N.C. 746, 365 S.E.2d 296 (1988), and argued in the parties' brief, N.C.R. App. P. 28(a), so that the issue for determination in this case is whether the Commission's decision was supported by "competent, material and substantial evidence."

In this case, Stroh Brewery produced competent, material and substantial evidence that the property was affected by total accrued depreciation, which included physical, functional, and economic obsolescence, in the amount of 65%. The County, however, produced some evidence that only physical obsolescence should be considered in valuing the property because Ring "did not think at this point in time when [he] made the appraisal that it warranted any economic and functional depreciation." Therefore, although there was conflicting evidence as to the obsolescence to consider, the Commission's finding that improvements on the property "were affected on 1 January 1988 by functional and economic obsolescence which the County did not consider in the course of its appraisal" is supported by competent, material and substantial evidence.

Stroh Brewery argues that "[i]n the absence of any other evidence in the whole record as to obsolescence," the Commission erred in fail-

ing to adopt McCloskey's findings of 50% functional and/or economic obsolescence resulting in a finding of 65% total accrued depreciation. We disagree. Although the Commission agreed with McCloskey that the property was affected by functional and economic obsolescence, it was not then bound to accept McCloskey's percentage for such obsolescence and could arrive at its own percentage so long as supported by competent, material and substantial evidence. *See In re Appeal of Westinghouse Elec. Corp.*, 93 N.C. App. 710, 379 S.E.2d 37 (fact that Commission used one expert's testimony for depreciation did not bind it to use that expert's method of calculation, "as it was free to accept as much of their testimony as it found convincing"); *Smith v. Smith*, 111 N.C. App. 460, 433 S.E.2d 196 (1993) (in equitable distribution case, if there is conflicting testimony as to value, court is not required to choose between values suggested but may arrive at value of its own choosing so long as based on appropriate factors in valuation process and evidence), *rev'd in part on other grounds*, 336 N.C. 575, 444 S.E.2d 420 (1994); *Nix v. Nix*, 80 N.C. App. 110, 341 S.E.2d 116 (1986) (same as in *Smith*). Therefore, because the Commission's findings of a total accrued depreciation of 37.75% and valuation of $24,599,830.00 are supported by competent, material and substantial evidence, the Commission's decision is

Affirmed.

Judges JOHN and McCRODDEN concur.